(Rev. 5/05)

**ORIGINAL**

FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. §1983

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

(1) **Wonell Ringgold (380856)**
(Name of Plaintiff)      (Inmate Number)

**P.O. Box 9561, Wilm. DE 19809**
(Complete Address with zip code)

(2) _____**N/A**_____
(Name of Plaintiff)      (Inmate Number)

_____**N/A**_____
(Complete Address with zip code)

(Each named party must be listed, and all names
must be printed or typed. Use additional sheets if needed)

vs.

(1) **Corrections Off. Miss Lamby**
(2) _____**N/A**_____
(3) _____**N/A**_____
(Names of Defendants)

(Each named party must be listed, and all names
must be printed or typed. Use additional sheets if needed)

06 - - 368

(Case Number)
( to be assigned by U.S. District Court)

**CIVIL COMPLAINT**

• • Jury Trial Requested

FILED
JUN - 1 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

I. **PREVIOUS LAWSUITS**

A. If you have filed any other lawsuits in federal court while a prisoner, please list the caption and case number including year, as well as the name of the judicial officer to whom it was assigned:

**NONE**

II. **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

In order to proceed in federal court, yon must fully exhaust any available administrative remedies as to each ground on which you request action.

A. Is there a prisoner grievance procedure available at your present institution?   • (Yes)  • •No

B. Have you fully exhausted your available administrative remedies regarding each of your present claims?   • (Yes)  • •No

C. If your answer to "B" is Yes:

1. What steps did you take? FILED GRIEVANCE.

2. What was the result? OVER A MONTH PASSED, AND THE PRISON NEVER ENTERTAINED IT.

D. If your answer to "B" is No, explain why not: N/A

III. **DEFENDANTS** (in order listed on the caption)

(1) Name of first defendant: C/O LAMBY
Employed as CORRECTIONS OFFICER at H.R.Y.C.I.
Mailing address with zip code: P.O. BOX 9561
WILM., DE 19809

(2) Name of second defendant: N/A
Employed as N/A at N/A
Mailing address with zip code: N/A

(3) Name of third defendant: N/A
Employed as N/A at N/A
Mailing address with zip code: N/A

(List any additional defendants, their employment, and addresses with zip codes, on extra sheets if necessary)

2

## IV. STATEMENT OF CLAIM

(State as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach no more than three extra sheets of paper if necessary.)

1. See Attachment.

2. See Attachment.

3. See Attachment.

## V. RELIEF

(State briefly exactly what you want the Court to do for you. Make no legal arguments. Cite no cases or statutes.)

1. See Attachment.

2. _____
_____
_____
_____
_____

3. _____
_____
_____
_____

I declare under penalty of perjury that the foregoing is true and correct.

Signed this __16TH__ day of __MAY__, 2006.

_____
(Signature of Plaintiff 1)

_____
(Signature of Plaintiff 2)

_____
(Signature of Plaintiff 3)

4

## IV. STATEMENT OF CLAIM

1. On or about April 12, 2006, the plaintiff, an incarcerated individual at H.R.Y.C.I., was in pursuit of his daily and usual avocations, wherein he was encountered by Corrections Officer Lamby about an alleged "problem" dealing with his hygiene.[1] This encounter was not direct, but rather was spawned out of the defendant's conversation with a fellow inmate to the plaintiff, William Webb (hereinafter "Webb"). The defendant told Webb that the plaintiff's hair had a profuse and odiferous smell.[2] She then continued to call the plaintiff "dirty," "filthy," and "sickly." Upon hearing these allegations, Webb notified the plaintiff, and the plaintiff promptly discontinued use of the "Sulfite Shampoo," and used approximately **three bottles** of Pert Shampoo to remove any traces of the smell from his hair. The plaintiff considered the matter to be resolved, and continued on with his day to day life.

2. On or about April 19, 2006, the plaintiff was notified by Webb that the defendant had inquired about another inmate named Terrence Jones (hereinafter "Jones") from Webb himself. At this particular point in time, Jones was a patient in St. Francis Hospital with complications associated with HIV/ AIDS.[3] Defendant Lamby told Webb that the reason that Plaintiff Ringgold's hair stunk so badly was because of the vast amount of medications that he takes. The defendant continued on with the revelation that the medications that the plaintiff takes are the same as those of Jones, who has HIV/ AIDS. Being totally astounded and shocked, Webb responded in doubt to the defendant; and the defendant promptly disclosed the plaintiff's full name, date of birth, and cell number. Within a matter of days thereafter, the plaintiff's medical status was disclosed or "leaked" to the entire "East Side" of H.R.Y.C.I. – amounting to about 700 other inmates.

3. In order to remedy this deliberate indifference applied to him by the defendant, the plaintiff contacted the Lieutenant of Defendant Lamby's shift (12 A.M. to 8 A.M.) – Lt. Kinney. The plaintiff gave a thorough statement of all that occurred to Lt. Kinney. Lt. Kinney "remedied" the plaintiff's allegations by informing him that she'd talk to the defendant, and have the defendant removed from his housing area (as an officer) within a matter of a couple of weeks from the contact. That never occurred.

4. On or about Friday April 21, 2006, he plaintiff emerged from his cell on his housing unit at about 12:30 A.M. to go to his assigned work position in the prison's Work Pool Program. Upon coming out of his cell, the plaintiff left his general housing area ("2T Pod") and headed for work out in the prison's hallways. As soon as he came out into the

---

[1] **NOTE:** The plaintiff only refers to Corrections Officer Lamby by her employee name, due to the fact that he's unable to ascertain her full name in an individual capacity. The complaint is **not** lodged against Miss Lamby in her capacity as a State Employee, but rather, as an individual, in her individual capacity, so as to forego any claims by said Miss Lamby that she is protected under the Sovereign Immunity clause of the Delaware Constitution.

[2] **NOTE:** The plaintiff has long "dred locks" as an integral part of his cultural observance. He maintenances his hair at least once per week with shampoo, conditioner, and other hair care products. At the particular point in time when the defendant alleged such an odiferous and profuse smell emanating from the plaintiff's hair, he was undergoing scalp treatment prescribed by the Medical Dept. at H.R.Y.C.I. with a solution called "Sulfite Shampoo." The "Sulfite Shampoo" has a sulfur smell, and when used in abundance, produces a not so pleasant aroma. Never the less, the treatment was sponsored by the Medical Dept. and was needed by the plaintiff at the time. The defendant's complaints and allegations, while acceptable within reason, became unwarranted when she decided to discuss this so-called "problem" with other prisoners.

[3] **NOTE:** Jones is presently pursuing a separate action against the D.O.C. for breach of medical confidentiality through its officers; and so it would serve the plaintiff to only limit his factual allegations concerning Jones' case.

hallways, the plaintiff encountered the defendant. She did not verbally communicate to the plaintiff, but rather, began taunting him by talking negatively about him to other inmate workers in the halls at that time. Additionally, the defendant went to Webb, who's the inmate Work Coordinator of the prison's Work Pool Program, and told him that she was aware of the statement that the plaintiff had made to Lt. Kinney. Furthermore, the defendant tried to cajole Webb into firing the plaintiff for no reason whatsoever, but Webb declined to act unethically.

5. On or about April 26, 2006, the defendant, contrary to Lt. Kinney's "remedy," was working on the plaintiff's housing area again. Upon noticing Defendant Lamby back on the pod, and recollecting the "bad blood" between the two, Plaintiff Ringgold decided to figure out a way to get to his inmate worker's position without an altercation. When the time arrived for the plaintiff's cell door to be opened in order for him to go pick up the housing area's food cart, which is a part of his work responsibilities, the defendant refused to open the door. The plaintiff rattled his door twice and flashed his cell light a few times, which was acknowledged by the defendant and subsequently ignored. Finally, all of the general housing area's cell doors were opened for breakfast. When the doors opened, the plaintiff approached the defendant and asked why she did not open his door for work. The defendant refused to acknowledge the plaintiff, so the plaintiff politely requested to speak with a Lieutenant about the situation. Again, the defendant refused to acknowledge the plaintiff. As a result, the plaintiff simply walked away and resumed his meal. About 5-10 minutes afterwards, the defendant picked up the phone and contacted two more Corrections Officers, who promptly came to the housing area. The two Officers, c/o Patty and c/o Cook, approached the plaintiff and asked to speak with him away from the rest of the general population on the housing unit. In the conversation that ensued, the plaintiff was told by the two c/o's that Defendant Lamby accused him of threatening her with bodily and/ or physical harm if she didn't call her superior officer. Due to the fact that the entire housing unit was out in the common area when the plaintiff addressed the defendant, this alleged threat was immediately quelled by over 50 witnesses. As a direct and proximate result of her attempt at retribution against the plaintiff, one of the two officers – c/o Cook – wrote a formal report about the situation, which *inter alia*, explained that Defendant Lamby had attempted to abuse her authority in order to exact retribution upon Plaintiff Ringgold for his initial complaint about her deliberate indifference concerning his medical condition. Thereafter, Lt. Kinney finally came to the housing unit and confronted the defendant and the plaintiff. In the end, the prospect of unjustly being placed in solitary confinement was nullified; however, defendant Lamby was no more than verbally reprimanded.

6. On or about April 30, 2006, the plaintiff was at work in the hallways again, and Lt. Harriford of the 12 A.M. to 8 A.M. shift approached and asked him "What do you want in order for this mess to go away?" During this conversation, the plaintiff and the Lieutenant were alone, which prompted the plaintiff to feel highly fearful, threatened, and insecure; and the overall tone and demeanor of the Lieutenant was *subtly* hostile. Never the less, this attempt at mediation by Lt. Harriford was unsuccessful, as the plaintiff informed him that he'd already contacted his family and had already filed an Inmate Grievance Form.

7. The plaintiff's Inmate Grievance was accepted by the prison's Grievance Committee; however, over a month has elapsed, and that remedy has obviously been purposely "delayed" in order to precipitate an air of officer support to the accused officer.
8. The plaintiff's claim is for a clear and overt application of deliberate indifference amounting to cruel and unusual punishment under the Eighth Amendment. He is requesting that damages be forthcoming.

**WHEREFORE,** based upon all of the foregoing facts, the plaintiff prays that this Honorable Court GRANT him an award of punitive and compensatory damages in a high dollar amount in order to deter, punish, and subvert any future deliberate indifference by the defendant. The award remains within the jurisdictional to this Honorable Court.

Respectfully Submitted,

**WONNELL RINGGOLD**
**PRO SE'**
**H.R.Y.C.I.**
**P.O. BOX 9561**
**WILMINGTON, DE 19809**

# 380 856
P.O. Box 9561
Wilm., DE 19809

U.S. District Court
844 King St
Wilm., DE 19801