# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WONELL RINGGOLD | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-368-SLR |
| | ) | |
| CORRECTIONS OFFICER LAMBEY[1] | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HER MOTION FOR SUMMARY

## NATURE AND STAGE OF THE PROCEEDINGS

1.      Wonell Ringgold ("Plaintiff" or "Ringgold") initiated this action pursuant to 42 *U.S.C.* § 1983 by filing a Complaint and Motion to Proceed *In Forma Pauperis* with the Court on June 1, 2006.  (D.I. 1, 2).  The plaintiff named Correctional Officer Kelley Lambey ("Officer Lambey") as a defendant in her individual capacity only. (Exhibit "A" – Complaint, at n.1).  The Court granted the plaintiff *in forma pauperis* status on February 7, 2007 (D.I. 14) and issued a service order on April 19, 2007.  (D.I. 15).

2.      Officer Lambey answered the Complaint on August 10, 2007.  (D.I. 20). The Court issued a Scheduling Order on October 11, 2007.  (D.I. 24).  Officer Lambey served Interrogatories and Requests for Production on the plaintiff on December 14, 2007.  (D.I. 24, 25).  The plaintiff has not responded to the discovery requests, or otherwise participated in this litigation since returning the waiver of service forms in May of 2007.

---

[1] Improperly named as Lamby in the Complaint.

3.      The plaintiff alleges a claim for a "clear and overt application of deliberate indifference amounting to cruel and unusual punishment under the Eighth Amendment." (Exhibit "A" – Complaint, at ¶8).  The bulk of the plaintiff's Complaint, however, does not allege constitutionally actionable claims, and specifically does not sufficiently allege an Eighth Amendment claim.  Officer Lambey moves for summary judgment asserting that the plaintiff has failed to allege or adduce evidence for an actionable Eighth Amendment claim.  And to the extent that the Court construes the Complaint as alleging a claim of disclosure of the plaintiff's personal information, there is no evidence to support an actionable claim under the Fourteenth[2] or Eighth Amendments.

### STATEMENT OF FACTS

4.      The plaintiff's Complaint accounts various problems he alleges that he had with Officer Lambey.  Much of the Complaint is based entirely on hearsay assertions from what another inmate, William Webb, allegedly told the plaintiff.  Ringgold asserts that Webb told him that Officer Lambey called the plaintiff names and discussed his hygiene with Webb.  (Exhibit "A" – Complaint, at ¶1).  The plaintiff also alleges that Webb told him that Officer Lambey told Webb that the plaintiff "stunk so badly because of the vast amount of medications that he takes" and that these medications were also taken by Inmate Jones, an inmate with HIV.  *Id.*  The plaintiff asserts that Webb was shocked and Officer Lambey "promptly disclosed" his name, cell number, and date of birth.  *Id.* at ¶2.  The plaintiff alleges that within days his HIV status was "leaked to the entire 'East Side' of H.R.Y.C.I.".  *Id.*

5.      The plaintiff then asserts that he encountered Officer Lambey on April 21,

---

[2] The plaintiff did not allege a violation of his Fourteenth Amendment right of privacy in the Complaint, and has not amended the Complaint to assert this claim.

2006 and she taunted him by talking negatively about him to other inmate workers and that she tried "to cajole Webb into firing the plaintiff." *Id.* at ¶4. The plaintiff next recounts an incident he alleges occurred on April 26, 22006 where Officer Lambey would not let him out of his cell. *Id.* at ¶5.

6.       As indicated in the affidavit of Officer Lambey attached hereto as Exhibit "B", she did not disclose any personal information about the plaintiff. Officer Lambey did not know that the plaintiff was HIV positive and she did not discuss the plaintiff's medications with any other inmates. Further, Officer Lambey did not have any discussions with William Webb, or any other inmate about the plaintiff's hygiene or otherwise. Officer Lambey did not have personal or social discussions with inmates, but only spoke to the inmates to the extent necessary to do her job. (Exhibit "B" – Lambey Affidavit).

7.       Officer Lambey does not deny the incident that the plaintiff alleges occurred on April 26, 2006. However, it actually occurred on April 19, 2006 and does not amount to any constitutionally actionable claim. The plaintiff angrily approached Officer Lambey on April 19, 2006 after she opened the cells for breakfast. The plaintiff was yelling and pounding his fist into a hand and demanding he speak to a lieutenant. Officer Lambey contacted the lieutenant through the chain of command. (Exhibit "B" – Lambey Affidavit).

8.       The lieutenant appeared and spoke with the inmate and Officer Lambey and resolved the situation. (Exhibit "B" – Lambey Affidavit). Apparently, the plaintiff had begun a job as the food carter worker and food cart workers are typically let out of their cell early, but Officer Lambey had not been informed that he was the food cart

3

worker and thus had not opened his cell.  (Exhibit "B" – Lambey Affidavit).  This was the extent of the incident on April 19, 2006, nothing more and certainly nothing that is constitutionally actionable as deliberately indifferent or cruel and unusual.

## ARGUMENT

Federal Rule 56(c) permits a Court to grant summary judgment, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The United States Supreme Court holds that a court must enter summary judgment, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celetox Corp. v. Carter*, 477 U.S. 317, 322-23 (1986).  "Argument supported by hearsay, not admissible at trial, cannot be considered on a motion for summary judgment."  *Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 (3d Cir. 1996).

## I.    Plaintiff Cannot Establish an Eighth Amendment Claim Against Officer Lambey.

None of the plaintiff's allegations are actionable under the Eighth Amendment.  A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  The Supreme Court requires that to establish deliberate indifference the plaintiff must demonstrate that the prison official knew of and disregarded an excessive risk to the inmate's health or safety and that the official acted recklessly by consciously disregarding a substantial risk of harm.  *Id.* at 837 (adopting subjective recklessness standard from criminal law as the test for deliberate indifference under the Eighth Amendment).

4

The plaintiff makes various allegations that Officer Lambey commented on his hygiene or spoke negatively about him to other inmates. The plaintiff has adduced no evidence in support of these assertions. Regardless, allegations of verbal abuse or harassment are not constitutionally actionable. *Robinson v. Taylor*, 204 Fed. Appx. 155, (3d Cir. 2006)(verbal harassment of a prisoner does not violate the Eighth Amendment); *See also Murray v. Woodburn*, 809 F.Supp. 383, 384 (E.D. Pa. 1993); *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001); *Prisoners' Legal Ass'n v. Roberson*, 822 F.Supp. 185, 189 (D.N.J. 1993). Moreover, Officer Lambey never discussed the plaintiff's hygiene or made any comments about the plaintiff, negative or otherwise, to the plaintiff or any other inmate. (Exhibit "B" – Lambey Affidavit).

The plaintiff asserts that Officer Lambey did not open his cell door in time for him to pick up his food cart. This is not disputed. Indeed, Officer Lambey did not let the plaintiff out of his cell on April 19, 2006 because she did not know that he was the food cart worker. (Exhibit "B" – Lambey Affidavit). An officer's failure to let an inmate out of his cell to work a job which he is not constitutionally entitled to work[3] is not cruel and unusual punishment. The plaintiff does not allege that there was a substantial risk of harm from his cell door not being opened. The plaintiff does not allege that he suffered any harm at all. Moreover, the plaintiff himself was displaying threatening behavior. When all of the cell doors opened for breakfast, the plaintiff approached Officer Lambey angry and yelling, and stepped beyond an established boundary. Officer Lambey's first reaction was to report the plaintiff's behavior up the chain of command. (Exhibit "B" – Lambey Affidavit). Officer Lambey did not know of or disregard a substantial risk of

---

[3] *Abdul-Akbar v. Dep't of Correction*, 910 F. Supp. 986 (D. Del. 1995)(inmates have no "legitimate entitlement" to employment or rehabilitation).

harm to the plaintiff.

It is further questionable whether the plaintiff would have any actionable Eighth Amendment claim based on the allegation that his medical information was disclosed. The plaintiff has not alleged, and has not produced any evidence to support that the alleged disclosure put him in a substantial risk of harm or that Officer Lambey disclosed such information with a reckless and conscious disregard for such harm. Indeed, as the record establishes, Officer Lambey never disclosed the information in the first instance. (Exhibit "B" – Lambey Affidavit).

A reasonable trier of fact could not conclude that the plaintiff's rights were violated under the Eighth Amendment because either the plaintiff's claims are not actionable or the plaintiff has produced no evidence to support his claims.

**II.     Ringgold Cannot Establish a Fourteenth Amendment Claim Against Officer Lambey.**

To the extent that the Court construes the plaintiff's Complaint as asserting a Fourteenth Amendment right of privacy claim, such a claim is unsupported by any evidence. The Third Circuit has recognized a constitutional right to privacy in a prisoner's medical information. *Doe v. Delie*, 257 F.3d 309, 317 (3d Cir. 2001). The *Doe* Court explained that this "right is subject to substantial restrictions and limitations in order for correctional officers to achieve legitimate correctional goals and maintain institutional security." *Id.* "A prisoner does not enjoy a right of privacy in his medical information to the same extent as free citizen." *Id.*

The plaintiff has provided no support for the assertion that his medical or personal information was disclosed. Indeed, even in the plaintiff's Complaint the allegation is based on the hearsay statement of another inmate, Webb. At the summary judgment

stage, hearsay evidence should not be considered unless the party offering the evidence can establish either that it can be reduced to a form that is admissible at trial or that it is not inadmissible hearsay under the Federal Rules of Evidence. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 327 (1986)(evidence produced at summary judgment stage must be admissible at trial). Officer Lambey did not discuss the plaintiff's hygiene, medical condition(s), medications, or any other information with Inmate Webb or any other inmate. (Exhibit "B" – Lambey Affidavit). At this stage of the litigation, the plaintiff cannot rest upon his bald unsupported allegations based on hearsay statements, but must set forth specific facts through evidence to establish a genuine issue for trial. *Celotex*, 477 U.S. at 322.

The record establishes that Officer Lambey did not disclose any personal information about the plaintiff and, given the absence of evidence from the plaintiff, there is no genuine issue of material fact to present to a jury. The plaintiff cannot establish that he has been denied the federal right to privacy, his claim must be dismissed, and Officer Lambey is entitled to judgment as a matter of law.

## III.    Plaintiff's Claim is Not Actionable Under § 1983 Because He Has Not Suffered Any Physical Injury.

The plaintiff does not allege an actionable injury. Section 1983, as a tort statute, requires an injury to be actionable. Under § 1983, damages are available for actions found to be in violation of constitutional rights and to have caused compensable injury. *Allah v. Al-Hafeex*, 226 F.3d 247, 250 (3d. Cir. 2000). A limitation on prisoner recovery is established in 42 *U.S.C.* 1997e(e). The statute provides as follows:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

Thus to have an actionable claim for compensatory damages on the basis of mental or emotional injury, a prisoner must first establish some physical injury. Further, where a plaintiff's claims have no basis in law or fact, he should be barred from the recovery of damages entirely. *Waples v. Kearney*, 2005 WL 724175, at 4 (D.Del. 2005) (citing *Ostrander v. Horn*, 145 F.Supp.2d 614, 619 (M.D. Pa. 2001))(Exhibit "C").

The plaintiff seeks punitive and compensatory damages. (Exhibit "A"– Complaint, at last page.). The plaintiff's Complaint, however, does not allege any injury, emotional, physical, or otherwise. Nor can Ringgold establish that he suffered any injury. His claim for compensatory damages should be dismissed for failure to allege any physical injury. Further, because the plaintiff's claims do not have an arguable basis in law or fact, Ringgold should be barred from recovering damages entirely, compensatory or otherwise.

## IV. Officer Lambey is Immune from Liability for the Plaintiff's Claims Pursuant to the Doctrine of Qualified Immunity.

The plaintiff cannot maintain an action against Officer Lambey in her individual capacity pursuant to the doctrine of qualified immunity. Government officials performing discretionary functions are immune from liability for damages, provided that their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is clearly established when, "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Furthermore, defendants are entitled to qualified immunity where they acted in good faith, without gross or wanton

negligence, in the performance of their discretionary duties. *Vick v. Haller*, 512 A.2d 249 (1986) (*aff'd in part and rev'd in part on procedural grounds*).

As discussed above, precedent clearly establishes that harassment or verbal threat claims are not constitutionally actionable under the Eighth Amendment. Should the Court find that these claims are actionable, Officer Lambey is entitled to qualified immunity because this conduct was not clearly established as actionable in 2006. Regardless, there is no evidence to support these claims. Further, there is no actionable constitutional claim for Officer Lambey's inadvertently not allowing the plaintiff out of his cell to work a job. The plaintiff suffered no harm from this incident and there is no evidence of deliberate indifference on the part of Officer Lambey, thus she did not violate a clearly established right of the plaintiff. Indeed, she was executing her job duties in good faith and without and without gross or wanton negligence. Finally, because there is no evidence that Officer Lambey disclosed personal information about the plaintiff, there is no actionable claim and Officer Lambey is entitled to immunity because she did not violate any right of the plaintiff.

Given that Officer Lambey is immune from liability in her individual capacity, the plaintiff cannot maintain this action and the Motion for Summary Judgment should be granted.

## V.    <u>CONCLUSION</u>

For the above stated reasons, Defendant Lambey respectfully request that this Honorable Court grant her Motion for Summary Judgment and dismiss the plaintiff's claims against her with prejudice.

**DEPARTMENT OF JUSTICE**
**STATE OF DELAWARE**

*/s/ Stacey Xarhoulakos*
Stacey Xarhoulakos (#4667)
Deputy Attorney General
Department of Justice
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302) 577-8400
*Attorney for Defendant Lambey*

Dated: February 15, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on February 15, 2008, I electronically filed *Defendant Lambey's Memorandum of Points and Authorities in Support of Motion for Summary Judgment* with the Clerk of Court using CM/ECF and have mailed by United States Postal Service, the document to the following non-registered party at both of the following addresses:

Wonell Ringgold
SBI # 382856
HRYCI
P.O. Box 9561
Wilmington, DE 19809

*and*

510 Buttonwood St.
Wilmington, DE 19801

/s/ Stacey Xarhoulakos
Stacey Xarhoulakos, I.D. No. 4667
Deputy Attorney General
Department of Justice
Carvel State Office Building
820 North French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
stacey.xarhoulakos@state.de.us
*Attorney for Defendant Lambey*

# EXHIBIT A

(Rev. 5/05)

**☐ ORIGINAL**

**FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT**
**UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. §1983**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

(1) WONELL  RINGGOLD (380856)        :
   (Name of Plaintiff)      (Inmate Number)   :
                                       :

P.O. Box 9561, Wilm. DE 19809        :
   (Complete Address with zip code)      :        0 6 - - 3 6 8
                                         :

(2)_____ N/A _____        :
   (Name of Plaintiff)      (Inmate Number)   :        (Case Number)
                                       :  ( to be assigned by U.S. District Court)

_____ N/A _____
   (Complete Address with zip code)      :

(Each named party must be listed, and all names   :
must be printed or typed. Use additional sheets if needed)   :
                                         :

             vs.           :        **CIVIL COMPLAINT**

(1) Corrections Off. Miss Lawry        :

(2)_____ N/A _____        :
                                         :    • •  Jury Trial Requested

(3)_____ N/A _____        :
       (Names of Defendants)      :

(Each named party must be listed, and all names   :
must be printed or typed. Use additional sheets if needed)   :

**FILED**

**JUN - 1 2006**

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

**I.    PREVIOUS LAWSUITS**

   A.    If you have filed any other lawsuits in federal court while a prisoner, please list the caption and case number including year, as well as the name of the judicial officer to whom it was assigned:

NONE

**II.     EXHAUSTION OF ADMINISTRATIVE REMEDIES**

In order to proceed in federal court, you must fully exhaust any available administrative remedies as to each ground on which you request action.

A.     Is there a prisoner grievance procedure available at your present institution?   • (Yes) • •No

B.     Have you fully exhausted your available administrative remedies regarding each of your present claims?   • (Yes) • •No

C.     If your answer to "B" is Yes;

   1.   What steps did you take? FILED GRIEVANCE.

   2.   What was the result? OVER A MONTH PASSED, AND THE PRISON NEVER ENTERTAINED IT.

D.     If your answer to "B" is No, explain why not:   N/A

**III.     DEFENDANTS** (in order listed on the caption)

(1)   Name of first defendant: C/O LAMBY

   Employed as CORRECTIONS OFFICER at H.R.Y.C.I.

   Mailing address with zip code: P.O. BOX 9561

   WILM., DE 19809

(2)   Name of second defendant: N/A

   Employed as N/A at N/A

   Mailing address with zip code: N/A

(3)   Name of third defendant: N/A

   Employed as N/A at N/A

   Mailing address with zip code: N/A

(List any additional defendants, their employment, and addresses with zip codes, on extra sheets if necessary)

2

## IV. STATEMENT OF CLAIM

(State as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach no more than three extra sheets of paper if necessary.)

1. See Attachment.

2. See Attachment

3. See Attachment.

## V.    RELIEF

(State briefly exactly what you want the Court to do for you. Make no legal arguments. Cite no cases or statutes.)

1. See Attachment.

2. _____
   _____
   _____
   _____
   _____

3. _____
   _____
   _____
   _____
   _____

I declare under penalty of perjury that the foregoing is true and correct.

Signed this ___16th___ day of ___May_____, 2006.

_____
(Signature of Plaintiff 1)

_____
(Signature of Plaintiff 2)

_____
(Signature of Plaintiff 3)

4

## IV.    STATEMENT OF CLAIM

1.    On or about April 12, 2006, the plaintiff, an incarcerated individual at H.R.Y.C.I., was in pursuit of his daily and usual avocations, wherein he was encountered by Corrections Officer Lamby about an alleged "problem" dealing with his hygiene.[1]  This encounter was not direct, but rather was spawned out of the defendant's conversation with a fellow inmate to the plaintiff, William Webb (hereinafter "Webb").  The defendant told Webb that the plaintiff's hair had a profuse and odiferous smell.[2]  She then continued to call the plaintiff "dirty," "filthy," and "sickly."  Upon hearing these allegations, Webb notified the plaintiff, and the plaintiff promptly discontinued use of the "Sulfite Shampoo," and used approximately **three bottles** of Pert Shampoo to remove any traces of the smell from his hair.  The plaintiff considered the matter to be resolved, and continued on with his day to day life.

2.    On or about April 19, 2006, the plaintiff was notified by Webb that the defendant had inquired about another inmate named Terrence Jones (hereinafter "Jones") from Webb himself.  At this particular point in time, Jones was a patient in St. Francis Hospital with complications associated with HIV/ AIDS.[3]  Defendant Lamby told Webb that the reason that Plaintiff Ringgold's hair stunk so badly was because of the vast amount of medications that he takes.  The defendant continued on with the revelation that the medications that the plaintiff takes are the same as those of Jones, who has HIV/ AIDS.  Being totally astounded and shocked, Webb responded in doubt to the defendant; and the defendant promptly disclosed the plaintiff's full name, date of birth, and cell number.  Within a matter of days thereafter, the plaintiff's medical status was disclosed or "leaked" to the entire "East Side" of H.R.Y.C.I. – amounting to about 700 other inmates.

3.    In order to remedy this deliberate indifference applied to him by the defendant, the plaintiff contacted the Lieutenant of Defendant Lamby's shift (12 A.M. to 8 A.M.) – Lt. Kinney.  The plaintiff gave a thorough statement of all that occurred to Lt. Kinney.  Lt. Kinney "remedied" the plaintiff's allegations by informing him that she'd talk to the defendant, and have the defendant removed from his housing area (as an officer) within a matter of a couple of weeks from the contact.  That never occurred.

4.    On or about Friday April 21, 2006, he plaintiff emerged from his cell on his housing unit at about 12:30 A.M. to go to his assigned work position in the prison's Work Pool Program.  Upon coming out of his cell, the plaintiff left his general housing area ("2T Pod") and headed for work out in the prison's hallways.  As soon as he came out into the

---

[1] **NOTE:** The plaintiff only refers to Corrections Officer Lamby by her employee name, due to the fact that he's unable to ascertain her full name in an individual capacity.  The complaint is **not** lodged against Miss Lamby in her capacity as a State Employee, but rather, as an individual, in her individual capacity, so as to forego any claims by said Miss Lamby that she is protected under the Sovereign Immunity clause of the Delaware Constitution.

[2] **NOTE:** The plaintiff has long "dred locks" as an integral part of his cultural observance.  He maintains his hair at least once per week with shampoo, conditioner, and other hair care products.  At the particular point in time when the defendant alleged such an odiferous and profuse smell emanating from the plaintiff's hair, he was undergoing scalp treatment prescribed by the Medical Dept. at H.R.Y.C.I. with a solution called "Sulfite Shampoo."  The "Sulfite Shampoo" has a sulfur smell, and when used in abundance, produces a not so pleasant aroma.  Never the less, the treatment was approved by the Medical Dept. and was needed by the plaintiff at the time.  The defendant's complaints and allegations, while acceptable within reason, became unwarranted when she decided to discuss this so-called "problem" with other prisoners.

[3] **NOTE:** Jones is presently pursuing a separate action against the D.O.C. for breach of medical confidentiality through its officers; and so it would serve the plaintiff to only limit his factual allegations concerning Jones' case.

hallways, the plaintiff encountered the defendant. She did not verbally communicate to the plaintiff, but rather, began taunting him by talking negatively about him to other inmate workers in the halls at that time. Additionally, the defendant went to Webb, who's the inmate Work Coordinator of the prison's Work Pool Program, and told him that she was aware of the statement that the plaintiff had made to Lt. Kinney. Furthermore, the defendant tried to cajole Webb into firing the plaintiff for no reason whatsoever, but Webb declined to act unethically.

5.    On or about April 26, 2006, the defendant, contrary to Lt. Kinney's "remedy," was working on the plaintiff's housing area again. Upon noticing Defendant Lamby back on the pod, and recollecting the "bad blood" between the two, Plaintiff Ringgold decided to figure out a way to get to his inmate worker's position without an altercation. When the time arrived for the plaintiff's cell door to be opened in order for him to go pick up the housing area's food cart, which is a part of his work responsibilities, the defendant refused to open the door. The plaintiff rattled his door twice and flashed his cell light a few times, which was acknowledged by the defendant and subsequently ignored. Finally, all of the general housing area's cell doors were opened for breakfast. When the doors opened, the plaintiff approached the defendant and asked why she did not open his door for work. The defendant refused to acknowledge the plaintiff, so the plaintiff politely requested to speak with a Lieutenant about the situation. Again, the defendant refused to acknowledge the plaintiff. As a result, the plaintiff simply walked away and resumed his meal. About 5-10 minutes afterwards, the defendant picked up the phone and contacted two more Corrections Officers, who promptly came to the housing area. The two Officers, c/o Patty and c/o Cook, approached the plaintiff and asked to speak with him away from the rest of the general population on the housing unit. In the conversation that ensued, the plaintiff was told by the two c/o's that Defendant Lamby accused him of threatening her with bodily and/ or physical harm if she didn't call her superior officer. Due to the fact that the entire housing unit was out in the common area when the plaintiff addressed the defendant, this alleged threat was immediately quelled by over 50 witnesses. As a direct and proximate result of her attempt at retribution against the plaintiff, one   of the two officers – c/o Cook – wrote a formal report about the situation, which *inter alia*, explained that Defendant Lamby had attempted to abuse her authority in order to exact retribution upon Plaintiff Ringgold for his initial complaint about her deliberate indifference concerning his medical condition. Thereafter, Lt. Kinney finally came to the housing unit and confronted the defendant and the plaintiff. In the end, the prospect of unjustly being placed in solitary confinement was nullified; however, defendant Lamby was no more than verbally reprimanded.

6.    On or about April 30, 2006, the plaintiff was at work in the hallways again, and Lt. Harriford of the 12 A.M. to 8 A.M. shift approached and asked him "What do you want in order for this mess to go away?" During this conversation, the plaintiff and the Lieutenant were alone, which prompted the plaintiff to feel highly fearful, threatened, and insecure; and the overall tone and demeanor of the Lieutenant was *subtly* hostile. Never the less, this attempt at mediation by Lt. Harriford was unsuccessful, as the plaintiff informed him that he'd already contacted his family and had already filed an Inmate Grievance Form.

7.  The plaintiff's Inmate Grievance was accepted by the prison's Grievance Committee; however, over a month has elapsed, and that remedy has obviously been purposely "delayed" in order to precipitate an air of officer support to the accused officer.

8.  The plaintiff's claim is for a clear and overt application of deliberate indifference amounting to cruel and unusual punishment under the Eighth Amendment.  He is requesting that damages be forthcoming.

**WHEREFORE,** based upon all of the foregoing facts, the plaintiff prays that this Honorable Court GRANT him an award of punitive and compensatory damages in a high dollar amount in order to deter, punish, and subvert any future deliberate indifference by the defendant. The award remains within the jurisdictional to this Honorable Court.

Respectfully Submitted,

**WONNELL RINGGOLD**
**PRO SE'**
**H.R.Y.C.I.**
**P.O. BOX 9561**
**WILMINGTON, DE 19809**



#388 856
P.O. Box 9561
WILM., DE 19809

U.S. District Court
844 King St.
WILM., DE 19801



# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

WONELL RINGGOLD    )
          )
   Plaintiff,     )
          )
   v.         )  C.A. No. 06-368-SLR
          )
CORRECTIONS OFFICER LAMBEY )
          )
   Defendant.    )

## AFFIDAVIT OF KELLEY LAMBEY

I, Kelley Lambey, having been duly sworn according to the law, do hereby depose and state the following:

1. At all times relevant to the allegations in the complaint, I was employed by the State of Delaware, Department of Correction at the Howard R. Young Correctional Institution ("HRYCI"), in Wilmington, Delaware as a Correctional Officer. I resigned from the Department in October of 2007.

2. I have reviewed the Complaint of Wonell Ringgold and dispute the allegations therein.

3. In April of 2006, the plaintiff was incarcerated at HRYCI and housed in the same pod that I worked.

4. On April 19, 2006, I was working T-Pod. I opened all of the doors for breakfast and announced that breakfast was served. Inmate Wonell Ringgold angrily came down the stairs and crossed the red line. The red line is there to establish a boundary for the inmates and they are not allowed to cross the line.

5. Ringgold stood there in a threatening manner clenching his right hand into a fist

and hitting his left open hand. He was yelling "I want to see a lieutenant right now." I felt very threatened.

6.      I followed the chain of command and contacted secondary control (Officer Young) and explained the situation to her, and she had the lead worker, Officer Paddy, contact me. I informed Officer Paddy that Inmate Ringgold was standing in front of me in a threatening stance and yelling that he wants to speak to a lieutenant. Officer Paddy indicated that he would contact Lt. Kenney.

7.      Several minutes later, Lt. Kenney contacted my by telephone and I explained the situation to her. She stated she would be right there. In a few minutes, she arrived with Officer Paddy and Officer Cook. They all went into the T.V. room with Inmate Ringgold. When they came out, Lt. Kenney stated that Inmate Ringgold was upset because he was the food cart worker and I did not let him out of his cell early to get the food cart.

8.      I informed Lt. Kenney that I had been working the pod before Inmate Ringgold's arrival and he was not the food cart worker. To my knowledge, he was an E-crew worker. Lt. Kenney informed me that he was now the food cart worker. This was the extent of the entire incident with the plaintiff on April 19, 2006.

9.      While employed as an officer with the DOC, I only spoke with the inmates to the extent that it was necessary to do my job. I never discussed the plaintiff's hygiene with William Webb, or any other inmate. I did not otherwise speak negatively to the plaintiff, or about the plaintiff, with any other inmates.

10.     As a correctional officer, I was not generally aware of the inmates' medical treatment or medical conditions. I did not know that the plaintiff was HIV positive, nor did I ever inform anyone that he was. I also did not discuss the plaintiff's medications

with anyone. I was not even aware of what medications the plaintiff was taking.

11.    I have made these statements based upon my personal knowledge, specialized training, and experience as an employee of the Department of Correction.

Officer Kelley Lambey

SWORN TO AND SUBSCRIBED BEFORE ME THIS 12 DAY OF February 2008.

NOTARY

VALERIE D. DAVIS
NOTARY PUBLIC
STATE OF DELAWARE
My commission expires July 28, 2011

# EXHIBIT C

Westlaw.

Not Reported in F.Supp.2d                                                         Page 1
Not Reported in F.Supp.2d, 2005 WL 724175 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Waples v. Kearney
D.Del.,2005.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Bruce WAPLES, Plaintiff,
v.
Rick KEARNEY, Jane Brady, and T. Henley
Graves, Defendants.
**No. Civ. 03-722-GMS.**

March 29, 2005.

Bruce L. Waples, Pro Se, Georgetown, DE.

MEMORANDUM ORDER

SLEET, J.
   **\*1** Bruce Waples ("Waples") is a *prose* litigant
who is currently incarcerated at the Sussex Correc-
tional Institution ("SCI") located in Georgetown,
Delaware. His SBI number is 170369. Waples has
filed this action pursuant to 42 U.S.C. § 1983, and
requested leave to proceed *informapauperis* pursu-
ant to 28 U.S.C. § 1915.

I. STANDARD OF REVIEW

   The court has jurisdiction over this matter pur-
suant to 28 U.S.C. § 1331. Reviewing complaints
filed pursuant to 28 U.S.C. § 1915 is a two-step
process. First, the court must determine whether
Waples is eligible for pauper status. On August 19,
2003, the court granted Waples leave to proceed
*informapauperis,* determined that he had no assets
with which to pay the filing fee and ordered him to
file an authorization form within thirty days, or the
case would be dismissed. Waples filed the required
authorization form on August 29, 2003.

   Once the pauper determination is made, the
court must then determine whether the action is
frivolous, malicious, fails to state a claim upon
which relief may be granted or seeks monetary re-
lief from a defendant immune from such relief pur-
suant to 28 U.S.C. §§

FN1 If the court finds that Waples' complaint falls
under any of the exclusions listed in the statutes,
then the court must dismiss the complaint.

   FN1. These two statutes work in conjunc-
   tion. Section 1915(e)(2)(B) authorizes the
   court to dismiss an *informapauperis* com-
   plaint at any time, if the court finds the
   complaint is frivolous, malicious, fails to
   state a claim upon which relief may be
   granted or seeks monetary relief from a de-
   fendant immune from such relief. Section
   1915A(a) requires the court to screen pris-
   oner complaints seeking redress from gov-
   ernmental entities, officers or employees
   before docketing, if feasible and to dismiss
   those complaints falling under the categor-
   ies listed in § 1915A(b)(1).

   When reviewing complaints pursuant to 28
U.S.C. §§ 1915(e)(2)(B)-1915A(b)(1), the court
must apply the standard of review set forth in
Fed.R.Civ.P. 12(b)(6).*SeeNeal v. Pennsylvania Bd.
of Prob. & Parole,* No. 96-7923, 1997 WL 338838
(E.D.Pa. June 19, 1997) (applying Rule 12(b)(6)
standard as appropriate standard for dismissing
claims under § 1915A). Thus, the court must
"accept as true factual allegations in complaint and
all reasonable inferences that can be drawn there-
from."*Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996)
(citing *Holder v. City of Allentown,* 987 F.2d 188,
194 (3d Cir.1993)).*Prose* complaints are held to
"less stringent standards than formal pleadings
drafted by lawyers" and can only be dismissed for
failure to state a claim when "it appears 'beyond
doubt that the plaintiff can prove no set of facts in
support of his claim which would entitle him to re-
lief.' " *Haines v. Kerner,* 404 U.S. 519, 520-521, 92
S.Ct. 594, 30 L.Ed.2d 652 (1972) (quoting *Conley
v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2
L.Ed.2d 80 (1957)).

   The United States Supreme Court has held that
as used in § 1915(e)(2)(B), the term "frivolous"
when applied to a complaint, "embraces not only

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 724175 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

the inarguable legal conclusion but also the fanciful factual allegation."*Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).FN2 Consequently, a claim is frivolous within the meaning of § 1915(e)(2)(B) if it "lacks an arguable basis either in law or in fact."*Id.* As currently presented, Waples' complaint has no arguable basis in law or in fact, and shall be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)-1915A(b)(1).

> FN2.*Neitzke* applied § 1915(d) prior to the enactment of the Prisoner Litigation Reform Act of 1995 (PLRA).Section 1915(e)(2)(B) is the re-designation of the former § 1915(d) under the PLRA. Therefore, cases addressing the meaning of frivolous under the prior section remain applicable. *See* § 804 of the PLRA, Pub.L. No. 14-134, 110 Stat. 1321 (April 26, 1996).

## II. DISCUSSION

### A. The Complaint and the Amendments

*2 Waples filed this complaint on July 16, 2003. (D.I.2) Waples names the following defendants: Rick Kearney ("Kearney"), Jane Brady ("Brady"), and T. Henley Graves ("Graves").(*Id.* at 3) However, Waples does not raise any specific allegations regarding Kearney, Brady, or Graves. (*Id.*) Rather, Waples alleges as follows: "Unlawful imprisonment pursuant to case # 96-05-0082 [.] I Bruce Waples did 18 months on a charge that carrys [sic] one year."(*Id.*) Waples requests that the court award him "1.5 million for mental anguish." (*Id.* at 4)

On August 8, 2003, Waples filed a "Statement of Claim," which the court construes as an amended complaint pursuant to Fed.R.Civ.P. 15(a). (D.I.5) Waples appears to be attempting to clarify his claims against each defendant. Specifically, he alleges that Graves sentenced him to one year at Level 5, "when I have already served approx. 6 months given credit for time serve [sic]."(*Id.*)Waples also alleges that Kearney "is the

warden at SCI at which [sic] I was held."(*Id.*) Finally, Waples alleges that Brady is "the Chief law officer of a State ... responsible for advising the government on legal matters and representing it in litigation."(*Id.*)

On October 17, 2003, Waples filed a Motion for Summary Judgment. (D.I.8) Waples asserts that he is bringing the motion pursuant to Fed.R.Civ.P. 56. Because this is an *informapauperis* case subject to screening under 28 U.S.C. §§ 1915(e)(2)(B)-1915A(b)(1), the court has not yet directed the United States Marshal to serve the complaint. Clearly, the Defendants cannot answer a complaint which they have not received. Therefore, the case is not ripe for summary judgment, and the court shall deny the motion.

### C. Analysis

#### 1. Judicial Immunity

The United States Supreme Court has held that judges are absolutely immune from suits for monetary damages and such immunity cannot be overcome by allegations of bad faith or malice. *SeeMireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *seealsoGallas v. Supreme Court of Pennsylvania,* 211 F.3d 760, 768 (3d Cir.2000) ("The Supreme Court long has recognized that judges are immune from suit under § 1983 for monetary damages arising from their judicial acts."). In *Gallas,* the Third Circuit explained that in order to determine whether judicial immunity is applicable in a particular case, courts must engage in a two-part test. *Gallas v. Supreme Court of Pennsylvania,* 211 F.3d at 769. "First, a judge is not immune from liability for nonjudicial actions, i.e. actions not taken in the judge's judicial capacity. Second, a judge is not immune for action, though judicial in nature, taken in the complete absence of all jurisdiction."*Id.* (quoting *Mireles v. Waco,* 502 U.S. at 11-12).

The *Gallas* Court went on to explain that the factors used to determine whether an act is judicial "relate to the nature of the act itself, i.e. whether it

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 724175 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

is a function normally performed by a judge, and to the expectations of the parties, i.e. whether they dealt with the judge in his judicial capacity."*Id.* (quoting *Stump v. Sparkman,* 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)). The second element of the test requires courts to distinguish between acts taken in the "clear absence of all jurisdiction," and acts taken in "excess of jurisdiction." *Gallas v. Supreme Court of Pennsylvania,* 211 F.3d at 769. Acts taken in the "clear absence of jurisdiction" do not enjoy the protection of absolute immunity, while acts taken merely in "excess of jurisdiction" do enjoy such protection. *Id.*

**\*3** In this case, Waples alleges that Graves violated his constitutional rights by sentencing him to confinement beyond the term prescribed by the Delaware statute. (D.I.5) As a Superior Court Judge, Graves was clearly acting in his "judicial capacity" when he sentenced Waples. Furthermore, Waples has not alleged that Graves acted "in the absence of all jurisdiction."To the contrary, Waples clearly alleges that "Graves was my sentencing Judge." (D.I.5) Consequently, Graves is immune from suit for monetary liability under 42 U.S.C. § 1983. Waples' claim against Graves lacks an arguable basis in law or in fact.

2. Waples' Claims Against Brady and Kearney

Waples alleges that as the "Chief law officer" of the State, Brady is "responsible for advising the government on legal matters and representing it in litigation."(D.I.5) Thus, Waples appears to be alleging that because of her position as the Attorney General, Brady is ultimately responsible for his alleged unlawful incarceration. Waples' claim against Brady must fail because it rests solely on a theory of vicarious or supervisory liability. Supervisory liability cannot be imposed under § 1983 on a respondeat superior theory. *SeeMonell v. Dep't. of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). In order for a supervisory public official to be held liable for a subordinate's constitutional tort, the of-

ficial must either be the "moving force [behind] the constitutional violation" or exhibit "deliberate indifference to the plight of the person deprived."*Sample v. Diecks,* 885 F.2d 1099, 1118 (3d Cir.1989) (citing *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). Waples does not raise any specific allegations regarding Brady. Rather, Waples argues that Brady is liable simply because of her supervisory position. (D.I. 5; D.I. 8)

Similarly, Waples' claim against Kearney must also fail. In *Sample,* the Third Circuit held that in order to establish § 1983 liability against a prison official for incarceration "without penological justification," a plaintiff must demonstrate the following elements: 1) that the prison official had knowledge of the prisoner's problem; 2) that the official either failed to act or took only ineffectual action, thus demonstrating deliberate indifference to the prisoner's plight; and, 3) that there is a causal connection between the official's response to the problem, and the unjustified detention. *Sample v. Diecks,* 885 F.2d at 1110. In this case, Waples states that he never filed a grievance, or in anyway brought his claim to the attention of prison officials at SCI before his release because, he alleges, he "did not know until after the fact."(D.I. 2 at 2) Clearly, this is not a case where prison officials were put on notice and then simply refused to investigate Waples' claim. *C.f.Alexander v. Perrill,* 916 F.2d 1392, 1398 (9th Cir.1998)(holding that warden and administrative systems manager had clearly established duty to investigate credible evidence regarding sentence miscalculation).

**\*4** Nothing in the complaint indicates that either Brady or Kearney were the "driving force [behind]," or that they were even aware of Waples' allegations and remained "deliberately indifferent" to his plight. *Sample v. Diecks,* 885 F.2d at 1118. Consequently, Waples' claims against Brady and Kearney have no arguable basis in law or in fact.

3. Waples' Request for Damages Based on "Mental Anguish"

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4
Not Reported in F.Supp.2d, 2005 WL 724175 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Waples does not claim that he suffered any physical injury during his alleged illegal confinement. Nonetheless, Waples requests "1.5 million dollars" compensatory damages for his "mental anguish." (D.I. 2 at 4) Section 1997e(e) of the PLRA, entitled "Limitation on Recovery," provides:

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

The Third Circuit has held that "[u]nder § 1997e(e), ... in order to bring a claim for mental or emotional injury suffered while in custody, a prisoner must allege physical injury ..."*Allah v. All-Hafeez,* 226 F.3d 247, 250 (3d Cir.2000). However, the *Allah* Court also construed the plaintiff's complaint as containing a claim for nominal damages and found that claims for nominal damages to vindicate a constitutional right are not barred under § 1997e(e).*Id.* at 252.This case is distinguishable from *Allah,* however, in that the court finds that Waples' claims against the defendants have no arguable basis in law or in fact. As such, Waples cannot recover damages, nominal or otherwise, for his alleged "mental anguish." *c.f.Ostrander v. Horn,* 145 F.Supp.2d 614, 619 (M.D.Pa. May 11, 2001)(finding that plaintiff failed to sufficiently allege any violation of his constitutional rights and, therefore, was not entitled to either compensatory or nominal damages for his emotional distress).

III. CONCLUSION

For the above stated reasons, the court finds that Waples' claim against the defendants is frivolous within the meaning of 28 U.S.C. §§ 1915(e)(2)(B)-1915A(b)(1). Waples' claim for "mental anguish" shall be dismissed pursuant to 28 U.S.C. § 1997e(e).

ORDER

NOW THEREFORE, this 29th day of March, 2005, IT IS HEREBY ORDERED that:

1. Waples's Motion for Summary Judgment (D.I.8) is DENIED.

2. Waples's claim against Graves is DISMISSED in accordance with the provisions of 28 U.S.C. §§ 1915(e)(2)(B)-1915A(b)(1).

3. Waples's claims against Brady and Kearney are DISMISSED in accordance with the provisions of 28 U.S.C. §§ 1915(e)(2)(B)-1915A(b)(1).

4. Waples's claim for "mental anguish" is DISMISSED in accordance with the provisions of 28 U.S.C. § 1997e(e).

5. The Clerk of the Court shall cause a copy of this Memorandum and accompanying Order to be mailed to Waples.

D.Del.,2005.
Waples v. Kearney
Not Reported in F.Supp.2d, 2005 WL 724175 (D.Del.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.