IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WONNELL RINGGOLD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 06-368-SLR |
| | ) |
| CORRECTION OFFICER LAMBY, | ) |
| | ) |
| Defendant. | ) |

Wonnell Ringgold, Pro Se, Wilmington, Delaware.

Stacey X. Stewart, Deputy Attorney General for the State of Delaware, Wilmington, Delaware. Counsel for Defendant.

**MEMORANDUM OPINION**

Dated: July 18, 2008
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

On June 1, 2006, plaintiff Wonnell Ringgold ("plaintiff") filed a pro se suit under 42 U.S.C. § 1983 against defendant correctional officer Kelley Lambey[1] ("defendant") in her individual capacity. The complaint alleges "deliberate indifference amounting to cruel and unusual punishment under the Eighth Amendment." (D.I. 2 at ¶ 8) Specifically, plaintiff claims that defendant wrongfully refused to allow him to leave his cell early to serve food and that defendant discussed plaintiff's hygiene and HIV status with another inmate. (D.I. 2) On August 10, 2007, defendant filed an answer to the complaint. (D.I. 20) On February 15, 2008, defendant filed a motion for summary judgment. (D.I. 26) On April 15, 2008, the court issued an order requiring plaintiff to file and serve an answering brief on or before May 16, 2008. (D.I. 28) As of the date of this opinion, plaintiff has not filed a response.[2] For the reasons that follow, defendant's motion for summary judgment is granted. (D.I. 26)

## II. BACKGROUND

Plaintiff was an inmate incarcerated at Howard R. Young Correctional Institution ("Gander Hill") at the time he initiated this lawsuit. (D.I. 2 at ¶ 1) Defendant was

---

[1] Based on defendant's brief and motion, it appears that the correct spelling of defendant's name is "Lambey"; however, for the purposes of consistency, the caption will remain "Lamby."

[2] The order sent to plaintiff requiring him to respond by May 16 was returned "undeliverable." (D.I. 29) Plaintiff has not notified the court of any changes in address and has not participated in this litigation for over a year. Plaintiff has a duty to prosecute his case. See Fed. R. Civ. P. 41(b) (stating that if a plaintiff fails to prosecute, defendant can move to dismiss). Plaintiff has failed to respond to any correspondence from defendant or this court since May of 2007, including the proposed scheduling order, interrogatories, request for production of documents, and the current motion for summary judgment. (See D.I. 21, 23-26)

employed as a correctional officer by the State of Delaware, Department of Correction ("DOC"), at the time of the alleged incidents, but resigned from DOC in October of 2007. (D.I. 27, ex. B) Defendant was assigned to Gander Hill in Wilmington, Delaware. (Id.)

In his complaint, plaintiff made several allegations regarding statements between another inmate, William Webb ("Webb"), and defendant.[3] According to plaintiff, on or about April 12, 2006, defendant discussed a "'problem' dealing with [plaintiff's] hygiene" with Webb. (D.I. 2 at ¶ 1) Specifically, plaintiff claims that defendant called plaintiff "'dirty,' 'filthy,' and 'sickly.'" (Id.) Defendant allegedly told Webb that the "reason that [plaintiff's] hair stunk so badly was because of the vast amount of medications that he takes." (Id. at ¶ 2) According to plaintiff, defendant continued on to tell Webb that medications are used by individuals who have HIV/AIDS. (Id.) Plaintiff claims that Webb responded doubtfully and defendant then provided Webb with plaintiff's "full name, date of birth, and cell number." (Id.) Plaintiff asserts that he reported the issues to defendant's lieutenant and was told that defendant would be removed from his housing area within a couple weeks.[4] (Id. at ¶ 3) Defendant denies ever discussing plaintiff's hygiene or in any other way negatively discussing plaintiff or anyone else with other inmates. (D.I. 27, ex. B at ¶ 7) Defendant further states that she had no

---

[3]Even though plaintiff did not respond to defendant's motion for summary judgment, the court has an obligation to construe pro se litigants' submissions liberally. See United States v. Otero, 502 F.3d 331, 334 (3d Cir. 2007). Consequently, plaintiff's version of events given in the complaint is included.

[4]According to plaintiff, defendant attempted to convince Webb to fire plaintiff and Webb refused. (Id. at ¶ 4) It is unclear whether Webb even had that authority.

2

knowledge of whether plaintiff was HIV positive and never informed anyone that he was. (Id. at ¶ 8)

In mid April[5], following the alleged statements made by defendant about plaintiff, an incident occurred between the parties. (See D.I. 2 at ¶ 5; D.I. 27, ex. B at ¶¶ 4-8) Cell doors are opened prior to meals for food service workers, which was plaintiffs job at that time. (See D.I. 2 at ¶ 5; D.I. 27 at ¶ 8) Prior to breakfast, plaintiff was trying to leave his cell to go pick up the housing area's food cart for work. (D.I. 2 at ¶ 5) Defendant refused to open plaintiff's cell door. (Id.; D.I. 27, ex. B at ¶ 4) When the cell doors opened for the general population for breakfast, plaintiff approached defendant and asked why defendant had not released him with the food service workers. (Id.) Plaintiff requested to speak with a lieutenant.[6] (D.I. 2 at ¶ 5; D.I. 27, ex. B at ¶ 5) Defendant contacted her chain of command and a lieutenant and two correctional officers responded. (D.I. 2 at ¶ 5; D.I. 27, ex. B at ¶¶ 6-7) The three of them took plaintiff in a private room and spoke to him about the incident. (D.I. 2 at ¶ 5; D.I. 27, ex. B at ¶¶ 6-7) Following the conversation, the lieutenant spoke to defendant and asked why she had not let plaintiff out of his cell. (D.I. 2 at ¶ 5; D.I. 27, ex. B at ¶¶ 7-8) According to plaintiff, the incident was intentional and was in retaliation for reporting the statements between defendant and Webb. (D.I. 2 at ¶ 5) Defendant claims that it was because "[t]o [her] knowledge, he was an E-crew worker," "not the food cart worker."

---

[5]Plaintiff alleges the event occurred on April 26, 2006 (D.I. 2 at ¶ 5) and defendant, in her affidavit, states that it was April 19. (D.I. 27, ex. B at ¶ 4)

[6]Defendant alleges that plaintiff behaved in a "threatening manner" (D.I. 27, ex. B at ¶ 5); however, plaintiff claims that he "politely requested to speak to a lieutenant." (D.I. 2 at ¶ 5)

3

(D.I. 27, ex. B at ¶ 8)

Plaintiff alleges that following the incident, he was approached by another lieutenant and asked "'What do you want in order for this mess to go away?'" (D.I. 2 at ¶ 6) Plaintiff claims he felt "fearful, threatened, and insecure; and the overall tone and demeanor of the Lieutenant was **subtly** hostile." (Id.) (emphasis in original) According to plaintiff, he informed the lieutenant that he already had contacted his family and filed a grievance. (Id.) Plaintiff asserts that following the acceptance of his grievance by the committee, over a month elapsed and it has "been purposely 'delayed' in order to precipitate an air of officer support to the accused officer." (Id. at ¶ 7)

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita,

475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

Plaintiff does not have a claim for deliberate indifference and cruel and unusual punishment under the Eighth Amendment. The United States Supreme Court has held that when a prisoner claims that conditions of his confinement violate the Eighth Amendment, he must demonstrate a culpable state of mind on the part of the prison officials. Wilson v. Seiter, 501 U.S. 294, 302 (1991). Conduct constituting cruel and unusual punishment is "obduracy and wantonness, not inadvertence or error in good faith." Whitley v. Albers, 475 U.S. 312, 319 (1986). The behavior "must involve more than ordinary lack of due care for the prisoner's interests or safety." Id. The United States Court of Appeals for the Third Circuit has found it to be "well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment." Robinson v. Taylor, 204 Fed. Appx. 155, 156 (3d Cir. 2006) (non-precedential case) (citing McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001));

DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000); Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997)). Since verbal harassment is not a violation of the Eighth Amendment, the alleged statements by defendant, even if true, would not be sufficient to withstand the motion for summary judgment.[7] Furthermore, defendant's failure to allow plaintiff to leave his cell to go to work was a good faith error and not an Eighth Amendment violation; even if it had been intentional, it would still not satisfy the wantonness required for actions to constitute cruel and unusual punishment.[8] See Whitley, 475 U.S. at 319.

Although plaintiff did not specifically plead a privacy issue, the court will construe his complaint liberally as asserting a Fourteenth Amendment right of privacy claim. See Otero, 502 F.3d at 334. One type of privacy protected by the Fourteenth Amendment is the interest in avoiding disclosure of personal matters. Doe v. Delie, 257 F.3d 309, 317 n.5 (3d Cir. 2001). Specifically, the Third Circuit has recognized a constitutional right to privacy in a prisoner's medical information. Id. While this right is subject to limitations, the Court found that it is "beyond question that information about one's HIV-positive

---

[7]Additionally, defendant argues that plaintiff cannot recover under § 1983 due to lack of physical injury. (D.I. 27 at 7) Section 1997e(e) of the Prison Litigation Reform Act prohibits compensatory damages for mental or emotional injury alone. It states that "[n]o federal civil action may be brought by a prisoner. . .for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C § 1997e(e). The Third Circuit has held, however, that 1997e(e) does not bar nominal and punitive damages for violations of constitutional rights even in the absence of physical injury. Allah v. Al-Hafeez, 226 F.3d 247, 251-52 (3d Cir. 2000). Since plaintiff is seeking compensatory and punitive damages, he is not barred entirely under § 1997e(e).

[8]Defendant also contends that she is entitled to qualified immunity. Since defendant is entitled to judgment on the merits, the court declines to address the issue of immunity from suit. (See D.I. 27 at 8-9)

6

status is information of the most personal kind and that an individual has an interest in protecting against the dissemination of such information." Id. at 317. The Court further held that this right to privacy is not "fundamentally inconsistent with incarceration." Id. The limitations and restrictions to the right to privacy exist "in order for correctional officers to achieve legitimate correctional goals and maintain institutional security." Id. The alleged statements made by defendant to inmate Webb do not involve correctional goals or institutional security; therefore, the facts, if true, could be found to be a violation of plaintiff's right to privacy.

Notwithstanding the above, plaintiff has failed to establish the existence of a genuine issue of material fact and no reasonable jury could find in his favor. Defendant's affidavit states that she did not have any discussions with Webb or any other inmates regarding plaintiff's hygiene, she was not aware of and did not disclose plaintiff's HIV status or medications, and she did not open defendant's cell door because she was unaware that plaintiff's work assignment had changed. (D.I. 27, ex. B at ¶¶ 4-10) Plaintiff's assertions are unsubstantiated by any evidence of record[9] and, as such, plaintiff has failed to meet his burden in this regard. Since plaintiff does not provide evidence to substantiate his allegations, there are no genuine issues of material fact and the motion for summary judgment is granted.

## V. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted. An appropriate order shall issue.

---

[9]Plaintiff does not provide any affidavits or statements to substantiate his claim.

7